IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVER HILL,<br><br>    Plaintiff,<br><br>  v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT and DOES 1 through 100, inclusive,<br><br>    Defendants.<br>_____/ | No. C 05-01185 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO FEDERAL CLAIMS AND REMANDING REMAINING STATE CLAIM** |

**INTRODUCTION**

In this employment-discrimination case, plaintiff alleges that he suffered racial harassment, hostile-work environment and retaliation by his co-workers at defendant Bay Area Rapid Transit District ("BART"). Defendant moves for summary judgment. This order finds that plaintiff cannot sustain his claims under either 42 U.S.C. 1981 or 1983 because he fails to make a *prima facie* showing that he suffered a constitutional tort sufficient to impose municipal liability. Defendant's motion as to plaintiff's federal claims is therefore **GRANTED**. The Court declines to retain supplemental jurisdiction of plaintiff's remaining state-law claim under California Government Code Section 12940(k) and therefore **REMANDS** that claim to state court.

**STATEMENT**

**THE ALLEGED HOSTILE-WORK ENVIRONMENT AND RETALIATION.**

Plaintiff, an African-American male who is 48, began working for BART as a transit-vehicle mechanic in January 1999 (Hill Decl. ¶¶ 1, 7). After eight months in BART's Daly City shop, plaintiff transferred to the Richmond shop in order to be closer to home (*id.* at ¶ 7). Plaintiff alleges that several of his Caucasian co-workers harassed him at the Richmond shop, in particular Christopher Van Fossen (Second Amd. Compl. ¶ 9). Van Fossen purportedly physically intimidated plaintiff and threw objects such as steel bolts at him (Hill Decl. ¶ 8). According to plaintiff, the conduct of Van Fossen was condoned by Tamar Allen, the Richmond shop manager at the time (Second Amd. Compl. ¶ 10). Allen is also Caucasian (*ibid.*). On December 4, 2000, plaintiff filed a complaint with BART's Office of Civil Rights, including a log of the alleged harassment recorded by Hill (Moore Decl. Exh. 2). Sharon Moore, principal administrative analyst in BART's OCR, opened an administrative file for the complaint (*id.* at ¶¶ 1, 5).

The following day, plaintiff alleges that Van Fossen hit him in the back of his hard hat (Second Amd. Compl. ¶ 15). Plaintiff maintains that the slap caused a cervical injury (*ibid.*). Plaintiff first reported the incident to BART police six days later, who in turn reported the slap to a shop supervisors (Lee Decl. Exh. 3). Upon learning of the incident, Allen conducted an investigation of the slapping incident by interviewing plaintiff, Van Fossen and others present in the break room (Allen Decl. ¶ 3). On December 20, 2000, Allen concluded that the slap did not occur and disciplined plaintiff with a fifteen-day suspension for filing a false complaint (*id.* at ¶ 8, Exh. 2). According to BART, Allen was unaware at the time that she was listed as a perpetrator of harassment in plaintiff's OCR complaint (*id.* at ¶ 9).

Meanwhile, Moore reviewed plaintiff's broader allegations of harassment by his co-workers and Allen (Moore Decl. ¶¶ 5–11). Moore apparently did not meet with Van Fossen, the other alleged harassers or Allen (*ibid.*). Instead, Moore determined the complaint was merely speculation deriving from plaintiff's paranoia (*id.* at ¶ 7). Moore shared her concerns with other employee services personnel at BART including Barbara George who agreed that

1 plaintiff possibly posed a threat of violence (*id*. ¶¶ 7–8).  On January 9, 2001, Allen, after

2 learning from George of the purported threat, ordered plaintiff to report to psychiatrist Dr.

3 Frank Ranuska for a "fitness for duty" evaluation (Allen Decl. Exh 3).  Plaintiff was advised

4 that he was on paid administrative leave pending Ranuska's evaluation (*ibid*.).

5       In February 2001, Ranuska issued a report that plaintiff was fit to return for work, but

6 only if he could be separated from the allegedly harassing co-workers (Lee Decl. Exh. 7).

7 George subsequently asked that Ranuska reevaluate plaintiff (*id*. Exh. 8).  In May 2001,

8 Ranuska issued a second report, again concluding that plaintiff was fit to return to work with

9 the limited restriction that he not work under Allen's chain of command (*ibid*.).

10       According to defendant, finding plaintiff a position fitting this limitation was difficult

11 (Allen Decl. ¶ 13).  By May 2001, Allen had been promoted to group manager, giving her

12 responsibility for the transit-vehicle mechanics at all four mechanic shops (*ibid*.).  Thus all

13 transit-vehicle mechanics would be under Allen's chain of command (*ibid*.).  Ranuska,

14 therefore, agreed to modify the restriction contained in his revaluation report, so that plaintiff

15 could work as long as he did not report directly to Allen (*id*. at ¶ 15).  Plaintiff returned to work

16 at the Concord shop on October 12, 2002 (*id*. at ¶ 16).  In June 2003, plaintiff transferred to the

17 Richmond shop (Second Amd. Compl. ¶ 38).  According to plaintiff, this transfer back to the

18 shop where Van Fossen worked was against his will (*ibid*.; Hill Decl. ¶ 40).  During his

19 deposition, however, plaintiff admitted that he put in a bid to return to the Richmond shop (Hill

20 Depo. 186:14-20).

21       In any event, upon his return to Richmond, plaintiff contends that the harassment

22 resumed (Second Amd. Compl. ¶ 39).  According to plaintiff, Van Fossen closely followed

23 plaintiff throughout the shop and physically intimidated him (*id*. at ¶¶ 39, 42).  Allen allegedly

24 was a witness to the stalking but did nothing (*id*. at ¶¶ 40, 42).  In particular, plaintiff contends

25 that on July 14, 2003, Van Fossen walked closely by plaintiff and said "we don't want you here,

26 nigger" (*id*. at ¶ 41).  On July 24, 2003, in the break room Van Fossen allegedly kicked plaintiff

27 in the leg with Van Fossen's steel-toe boot causing a bruise (*id*. at ¶ 42).  Plaintiff initially

28 reported the kicking incident to union representatives (*ibid*.).  Several months later, plaintiff

3

1 reported the racial slur and the kick to BART police (*ibid.*). Allen's successor Sean Steele
2 investigated plaintiff's complaints, apparently by taking a statement from plaintiff, Van Fossen
3 and potential witnesses (Steele Depo. 54:1–57:10). Steele found plaintiff's complaints baseless
4 and issued a written reprimand for filing a false charge (*ibid.*). Plaintiff further contends that
5 during his second stint in Richmond, BART management singled him out for special scrutiny
6 (Second Amd. Compl. ¶ 48).

7 Additionally, plaintiff contends that BART rubber stamped a counterclaim for
8 harassment brought by Van Fossen (*id.* at ¶ 51). According to plaintiff, the extent of Van
9 Fossen's counter-complaint was that plaintiff said "excuse me" in a sarcastic tone (*id.* at ¶ 43).
10 Plaintiff complains that he was unable to obtain a copy of the allegations filed against him at the
11 time (*id.* at ¶ 44).

12 In January 2004, plaintiff transferred back to the Concord shop where plaintiff continues
13 to work (Allen Decl. ¶ 74).

14 **PROCEDURAL HISTORY.**

15 On January 12, 2004, plaintiff filed complaints for discrimination and retaliation with
16 the California Department of Fair Employment and Housing and the United States Equal
17 Employment Opportunity Commission. The DFEH issued a right-to-sue letter on the same day
18 and the EEOC issued such a letter on May 25, 2004.

19 Plaintiff filed suit in California Superior Court for the County of Alameda on August 24,
20 2004, against BART, Allen and Van Fossen. In that complaint, plaintiff alleged several claims
21 under California Government Code Section 12940, as well as intentional infliction of emotional
22 distress, assault and battery. Following a partial demurrer, plaintiff filed an amended complaint
23 on February 25, 2005, in state court, which no longer listed Van Fossen or Allen as defendants,
24 only included a claim for failure to prevent discrimination under Section 12940 and added a
25 claim for deprivation of civil rights under 42 U.S.C. 1983 against BART. BART removed the
26 case to this Court on March 23, 2005 asserting federal-question jurisdiction. Plaintiff
27 subsequently filed the operative second amended complaint on July 8, 2005, adding a claim for
28 deprivation of civil rights under 42 U.S.C. 1981 against BART.

4

Discovery has closed. Defendant moved for summary judgment on December 8, 2005. After full briefing and hearing, this order now issues.

## ANALYSIS

### 1. LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FRCP 56(c). Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence, and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

The moving party "has both the initial burden of production and ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Credibility determinations, weighing evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

On a motion by the party without the burden of proof at trial, the party may carry its initial burden by either of two methods. "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1106. Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal quotations omitted). Summary judgment for a defendant is appropriate when plaintiff fails to make a showing sufficient to

5

establish the existence of an element essential to that party's case, and on which party will bear the burden of proof at trial. *Id.* at 322.

### 2. PLAINTIFF'S FEDERAL CLAIMS FAIL AS A MATTER OF LAW.

As a threshold matter, to obtain relief against a municipality under Sections 1981 or 1983, a plaintiff must prove that he has suffered a constitutional tort. "[T]he municipality itself must cause the constitutional deprivation . . . a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)(*citing Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). The same principle applies to Section 1981. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214–15 (9th Cir. 1996)("[I]t is highly implausible that Congress silently intended to impose *respondeat superior* liability on state actors for the violation of § 1981 rights, a change which would create an enormous new burden on government defendants"). A plaintiff may establish municipal liability in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette*, 979 F.2d at 1346–47 (internal citations omitted).

Plaintiff does not dispute that BART is a municipality for purposes of Sections 1981 and 1983. Plaintiff argues that "[t]he discrimination, harassment and retaliation campaign against Hill was pursuant to longstanding practice and custom which constituted standard operating procedure" (Oppo. 24). To prevail on a theory of custom or usage, plaintiff must prove "the existence of a widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Gillette*, 979 F.2d at 1349 (internal citation omitted).

6

1    Plaintiff does not meet this burden.  Despite a full opportunity for discovery, plaintiff
2 makes only conclusory statements about the pervasiveness of such harassment.  Plaintiff alludes
3 to only one specific example of similar harassment.  Plaintiff reports that another African-
4 American employee at BART "explained to me" that his Caucasian co-worker kicked him and
5 that management did not discipline the alleged kicker (Hill Decl. ¶ 60).  This hearsay allegation
6 is flawed, most notably due to plaintiff's failure to submit a first-hand declaration from the
7 purported victim.  In any event, this single anecdote fails to create a *prima facie* showing of a
8 "permanent and well settled" practice with "the force of law."

9    Alternatively, plaintiff suggests that an official with policy-making authority ratified the
10 harassment and retaliation.  Here, California law governs whether a particular official has
11 policy-making authority.  *Gillette*, 979 F.2d at 1346–47.  With respect to the transit districts in
12 California, "[t]he board of directors . . . shall determine all questions of district policy."  Cal.
13 Pub. Utils. Code 28762.  "[A] federal court would not be justified in assuming that municipal
14 policymaking authority lies somewhere other than where the applicable law purports to put it."
15 *Gillette*, 979 F.2d at 1350.

16    Plaintiff argues that the conduct was ratified by "BART's Office of Civil Rights,
17 BART's Office of the General Counsel (representing the BART Board of Directors), and at
18 least one member of the BART Board of Directors" (Oppo. 25).  Again, defendant sufficiently
19 demonstrates the absence of proof that the board of directors took any affirmative action with
20 respect to the purported racial harassment.  To demonstrate ratification, plaintiff must show that
21 the board made "a deliberate choice from among various alternatives to follow a particular
22 course of action."  *Gillette*, 979 F.2d at 1348.  Plaintiff presents no such evidence.  Indeed,
23 plaintiff does not even argue that the whole board ever became involved.  Plaintiff's federal
24 claims therefore fail.

25    **3.    THE COURT DECLINES TO RETAIN JURISDICTION OVER STATE LAW CLAIM**
26    At the hearing, counsel all agreed that the only federal claim is asserted against BART.
27 No federal claims have been asserted against any individual defendants.

7

A district court may decline to exercise supplemental jurisdiction over a state-law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). "When federal claims are dismissed before trial, the question whether pendent state claims should still be entertained is within the discretion of the district court." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)(citation omitted). While the exercise of discretion may not be taken lightly, our circuit has deemed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir 1997)(internal citation omitted).

So too here. Having determined that plaintiff's Section 1981 and Section 1983 claims cannot go forward, plaintiff's only remaining claim is for failure to prevent discrimination under California Government Code Section 12940(k). Nothing about this claim suggests the Court should exercise its discretion counter to the usual case. Indeed, the California Superior Court for the County of Alameda has spent at least an equal amount of time with the remaining legal issues, having already considered BART's demurrer. Moreover, it is possible that unique questions regarding Section 12940(k) may arise, such as what constitutes an adequate investigation and whether the continuing-violation doctrine applies. Such issues are better resolved by the California courts. This order thus finds that remand of plaintiff's Section 12940(k) claim is appropriate.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment as to plaintiff's federal claims. The Court **REMANDS** plaintiff's remaining claim under Section 12940(k) for adjudication in the California Superior Court for the County of Alameda.

**IT IS SO ORDERED.**

Dated: January 17, 2006

WILLIAM ALSUP

8

UNITED STATES DISTRICT
JUDGE

9